UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AIMEE REID, as Personal Representative of the Estate of Jeffrey Reid,<br><br>            Plaintiff<br>   vs.<br><br>C. AARON ROVENSTINE, in his official capacity as Sheriff of Kosciusko County, Indiana, et al.,<br>            Defendants | Case No.: 3:05-CV-126 RM |

<u>OPINION AND ORDER</u>

Aimee Reid brings suit pursuant to 42 U.S.C. § 1983 as the personal representative of the estate of her deceased husband Jeffrey Reid, alleging the defendants violated Mr. Reid's Fourteenth Amendment right to receive adequate medical supervision and care while being detained at the Kosciusko County Jail.[1] The defendants move for partial summary judgment, and for the reasons that follow, the court grants their motion in part and denies it in part.

The following facts are taken from the summary judgment record for purposes of this motion only and are viewed as favorably to Ms. Reid as is reasonable. Mr. Reid was arrested and booked for being a habitual traffic offender and refusing to submit to a Breathalyzer test in the early hours of Saturday, March 15, 2003. He told his booking officer, Steve Barnhart, that he had consumed only three beers, but that he suffered from hepatitis. Officer Barnhart

---

[1] Ms. Reid also alleges several state law claims, but neither party addresses these claims in their briefing, so this order doesn't address the propriety or existence of them.

didn't observe Mr. Reid exhibiting any visible signs of intoxication or alcohol withdrawal, and because Mr. Reid had refused a Breathalyzer, Officer Barnhart didn't check his blood alcohol level when he was booked. Mr. Reid's brother-in-law (also an officer with the Kosciusko County Sheriff's Department) told Officer Barnhart that Mr. Reid was an alcoholic and may experience "DTs," which Officer Barnhart understood to mean "withdrawals." Mr. Reid slept the remainder of the day and received no additional nursing assessment or other medical care.

On Sunday the jail nurse was out of town, and because Mr. Reid's brother-in-law noticed Mr. Reid was "having DT's," he asked Nurse Clouse, the former County jail nurse, to go check on Mr. Reid. She observed that Mr. Reid looked "very anxious," "was very agitated," and was "climbing the walls." She contacted Dr. Mark Jensen, who believed Mr. Reid was going through alcohol withdrawal, so he prescribed Librium to lower his blood pressure. Nurse Clouse administered one dose, made out a medication card, instructed the officers on giving the medication, and went home.

Officer Barnhart returned to the County Jail on Sunday evening to find Mr. Reid disoriented and hallucinating. He noted in the daily log for the next shift that Mr. Reid was "really starting to lose it," "seeing all sorts of different types of creatures," and had not slept the entire shift. Officer Barnhart moved Mr. Reid to a padded cell because he was punching the wall. Officer Barnhart didn't perform a physical assessment, contact the jail medical staff, or chart any information as to Mr. Reid's possible alcohol withdrawal. He did, however, let the officers in the

day shift know that he believed Mr. Reid was suffering from withdrawal complications and directed them to keep a "good eye" on him. There is no documentation Mr. Reid was observed every half-hour while in the paddled cell.

Nurse Jayne Stoops came into work at the County Jail Monday morning and reviewed the log from the weekend; she noted that Dr. Jensen had proscribed Librium for Mr. Reid. Nurse Stoops did a physical assessment of Mr. Reid and confirmed that his symptoms included hallucinations, shakes, detoxification, and medium tremors. She performed a second assessment that afternoon and noted his continued symptoms and increased blood pressure, so she contacted Dr. Jensen. The content of their conversation is unclear from the record. Dr. Jensen says he told Nurse Stoops to refer Mr. Reid to the Bowen Center, and that he was never told that Mr. Reid had a gait disturbance, had bumped into the walls more than once, or had hepatitis. Nurse Stoops doesn't recall Dr. Jensen ordering a Bowen Center evaluation on Monday. In any event, Mr. Reid wasn't referred to the Bowen Center, but his Librium dosage was increased.

Nurse Stoops performed a second evaluation Tuesday morning, and again noted Mr. Reid's continued hallucinations, shakes, and increased blood pressure. She scheduled Mr. Reid to speak with Bowen Center therapists the next day, but didn't believe he needed urgent medical care because his blood pressure and pulse had also gone down a bit. Mr. Reid was given a blanket, food and water, and a shower. Later that morning, Nurse Stoops learned that Mr. Reid was hitting the

3

door and walking unsteadily in his padded cell, so she had Officers Tom Craft and Angela Waddle put him in a restraint chair.[2]

Mr. Reid's father came to visit him about 2:00 p.m. on Tuesday. Nurse Stoops testified that she walked Mr. Reid's father to the door and when she returned to the booking area, she heard Mr. Reid take a deep long breath. She took his vital signs and found his pulse was irregular, so she call E.M.S. and began C.P.R.. Mr. Reid was taken to the emergency room where his condition was diagnosed as asystolic/polymorphic ventricular tachycardic arrest. The coroner's preliminary report states the cause of death to be delirium tremens due to chronic alcoholism.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The

---

[2] Angela Waddle was formerly known as Angela Haecker.

mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (quoting Schacht v. Wisconsin Dep't of Corr.,175 F.3d 497, 504 (7th Cir. 1999)).

Ms. Reid sues Nurse Stoops, Officer Barnhart, Officer Craft, and Officer Waddle in their individual capacities under 42 U.S.C. § 1983, which "requires proof that the defendants were acting under color of state law and that the defendants' conduct violated the plaintiff's rights, privileges, or immunities secured by the Constitution or laws of the United States." Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir.2001) (quotation omitted). The parties don't dispute for purposes of this motion that the defendants acted under color of state law. Ms. Reid says Nurse Stoops, Officer Barnhart, Officer Craft, and Officer Waddle, through their deliberate indifference to Mr. Reed's serious medical needs, violated his Fourteenth Amendment right to receive adequate medical supervision and care during his confinement. *See* Farmer v. Brennan, 511 U.S. 825, 832-834 (1994) (the Eighth Amendment imposes a duty on prison officials to ensure that

5

inmates receive adequate food, clothing, shelter, and medical care, and requires that officials "take reasonable measures to guarantee the safety of the inmates"); Board v. Farnham, 394 F.3d 469, 477-478 (7th Cir. 2005) ("[T]he constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment ... [and] [a]lthough the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners.").[3] The defendants say they are entitled to judgment as a matter of law because the undisputed material facts show they weren't deliberately indifferent to Mr. Reid's medical needs.

To succeed on a deliberate indifference claim, a plaintiff must satisfy both an objective and subjective element: (1) the harm that befell the detainee was objectively, sufficiently serious, and a substantial risk to his health or safety, and (2) that the defendant was deliberately indifferent to the detainee's health and safety. Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003). The parties don't dispute that the first prong is satisfied, and the court agrees that alcohol withdrawal, which produces delirium tremens and results in death, is clearly an objectively serious harm. Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999) ("A condition is objectively serious if 'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'") (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)).

---

[3]The complaint originally alleged that Sheriff Aaron Rovenstine, Officer Drew Shingler, Officer Riley and Officer Sherwin were also deliberately indifferent to Mr. Reid's medical needs, but those claims were dismissed pursuant to a stipulation.

"[D]eliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm." Woodward v. Correctional Medical Services of Illinois, Inc., 368 F.3d 917, 926 (7th Cir. 2004). A detainee must demonstrate that the defendant (1) subjectively knew the detainee was at substantial risk of serious harm, and (2) intentionally disregarded the risk. Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006). While this is a "high hurdle," Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002), a party "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Woodward v. Correctional Medical Services of Illinois, Inc., 368 F.3d at 927 (quoting Farmer v. Brennan, 511 U.S. at 842).

"With respect to the first showing, 'it is not enough that there was a danger of which a prison official should have been aware,' rather, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Collins v. Seeman, 462 F.3d at 761 (quoting Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000)). A plaintiff, however, may establish subjective awareness of the risk by proof of the risk's obviousness. Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 260 (7th Cir. 1996). The summary judgment record contains enough evidence to allow a rational trier of fact to reasonably infer that

7

Nurse Stoops subjectively knew Mr. Reid was at risk to suffer serious harm as a result of his alcohol withdrawal.

Nurse Stoops testified that she had experience in the care and assessment of persons suffering from alcohol withdrawal. She said she was aware of the medical complications of the condition, including high blood pressure, elevated temperature, and cardiac and liver problems, and that she had been trained in the symptoms of withdrawal, such as tremors, seizures, high blood pressure, and hallucinations. She was aware on March 17 and 18 that Mr. Reid was suffering from hallucinations, shakes, medium tremors, and that his blood pressure had increased to an elevated level. These facts were made known to Nurse Stoops, and the risk they presented were sufficiently obvious that a jury could conclude that the she drew the requisite inferences.

"[N]either medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference," but a detainee needn't show he was "literally ignored." Greeno v. Daley, 414 F.3d 645, 653-654 (7th Cir. 2005). Intentional mistreatment can be evidenced from treatment that is "so blatantly inappropriate." Edwards v. Snyder, --- F.3d ----, 2007 WL 675506 (7th Cir. 2007) (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted); Greeno v. Daley, 414 F.3d at 654; *see also* Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that

8

is, that no minimally competent professional would have so responded under those circumstances."); Estate of Cole by Pardue v. Fromm, 94 F.3d at 261-262. There is also enough evidence in the summary record to allow a jury to conclude that Nurse Stoops intentionally disregarded the known risk.

Nurse Stoops evaluated Mr. Reid on Monday and Tuesday. She charted his continual hallucinations, medium tremors, and moist skin, as well as his progressively increased blood pressure and pulse, despite Mr. Reid taking Librium, a drug intended to decrease blood pressure. She spoke with Dr. Jensen twice and increased the Librium dosage at his request. Dr. Jensen testified that he also directed Nurse Stoops to set up a Bowen Center psychiatric consultation to see whether Mr. Reid could make his own decisions. Nurse Stoops denies she was given this directive.

Nurse Stoops never referred Mr. Reid for a medical or psychological evaluation or treatment. Instead, she told the jail staff to monitor Mr. Reid closely, and after speaking with him on Tuesday, scheduled him for a Wednesday alcohol rehabilitation class. Mr. Reid was then given a shower, a blanket, and some food and water, but he continued to have hallucinations, tremors, perspiration, and his blood pressure remained elevated. He began to hit his cell door with his shoulder, arms, and head and was walking unsteadily. Nurse Stoops restrained him around 11:00 a.m. for his safety but didn't make any additional assessments until after 2:00 p.m., when she returned from walking Mr. Reid's father to the visiting areas. When she returned, she heard Mr. Reid take one deep breath; she took his vital

9

signs and found his pulse to be irregular, so she called E.M.S. and began giving C.P.R. in an unsuccessful effort to save his life.

Nurse Stoops says she wasn't deliberately indifferent to Mr. Reid's medical needs because she evaluated him daily, spoke with Dr. Jensen, provided him with medication and other necessities, restrained him for his own safety, and gave him emergency medical care shortly before he died. The court cannot agree. A reasonable trier of fact could find that Nurse Stoops knew Mr. Reid was suffering from symptoms of withdrawal and delirium tremens, but never referred him to the Bowen Center or the emergency room despite his history of hepatitis and his condition not improving. Based on her decision not alter his treatment through supplemental medical evaluations or treatment, combined with a question of fact as to whether she ignored Dr. Jensen's directives to the contrary, a fact finder could conclude the treatment Mr. Reid received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" his condition. Greeno v. Daley, 414 F.3d at 653-654 (holding that a fact finder could infer intentional mistreatment from "the medical defendants' obdurate refusal to alter Greeno's course of treatment despite his repeated reports that the medication was not working and his condition was getting worse.").

The remaining defendants are non-medical personnel, who generally can defer reasonably to the medical professionals' opinions and are often justified in believing a detainee is receiving the necessary and proper medical treatment. Johnson v. Doughty, 433 F.3d 1001, 1010-1011 (7th Cir. 2006); Greeno v. Daley,

414 F.3d at 656; Bond v. Aguinaldo, 228 F. Supp.2d 918, 920 (N.D. Ill. 2002). Both Officer Craft and Officer Waddle testified that they knew little about alcohol withdrawal symptoms and were unaware that serious consequences existed for a person experiencing withdrawal. Officer Craft testified to giving information on Mr. Reid's condition to Nurse Stoops, and Officer Waddle testified to assisting her in the treatment of Mr. Reid when instructed to do so. Both officers also knew Nurse Stoops was providing Mr. Reid medical care. Nothing in the record suggests that it was unreasonable for the officers to rely on Nurse Stoops's judgment, so the court cannot say a jury could find they acted with deliberate indifference toward Mr. Reid. *See* Johnson v. Doughty, 433 F.3d at 1011-1012.

Officer Barnhart, however, is an unusual case. Although he isn't a medical professional, he testified that Mr. Reid's brother-in-law told him that Mr. Reid may experience withdrawal or detoxification, and that he knew from experience the serious health effects of alcohol withdrawal, including heart attack, stroke, or death. When Officer Barnhart was later interviewed as part of a police investigation, he testified that he believed Mr. Reid had been suffering from alcohol withdrawal or detoxification, was seriously ill, and was hallucinating and sweating. A rational trier of fact could reasonably infer that Officer Barnhart knew Mr. Reid was at risk to suffer serious harm as a result of his alcohol withdrawal, so it wasn't reasonable in this case for him to rely on Nurse Stoops's judgment. *Cf.* Bond v. Aguinaldo, 228 F. Supp.2d at 920 ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or

11

inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.").

Officer Barnhart observed Mr. Reid's condition Sunday evening through Monday morning, and despite knowing the situation's seriousness, he did not properly document or report Mr. Reid's condition, call a medical doctor, or seek medical instructions. Instead, he placed Mr. Reid in a padded cell, documented that Mr. Reid was "beginning to lose it," and advised officers to watch him closely. A fact finder could reasonably conclude he was deliberately indifferent to a substantial risk to Mr. Reid's health. *Cf.* Greeno v. Daley, 414 F.3d at 656 ("Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns.").

Although Ms. Reid has provided sufficient evidence to survive summary judgment on her claims that Nurse Stoops and Officer Barnhart were deliberately indifferent to her husband's medical condition, the defendants sued in their individual capacity say they are entitled to a qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). "To overcome the defense of qualified immunity, a plaintiff must show the deprivation

12

of a constitutional right, and must also show that the right was clearly established at the time of the violation." Id. Under certain circumstances, such as those presented here, the deliberate indifference and qualified immunity inquiries effectively collapse into one. Id.

Because there is a question of fact as to whether Nurse Stoops and Officer Barnhart had actual knowledge of the threat to the Mr. Reid's health and whether they took reasonable measures in response to that risk, they "may not avoid trial on the grounds of qualified immunity." Id. With regard to Officer Craft and Officer Waddle, "the uncontested facts reveal a fatal gap" in Ms. Reid's case, so they are also entitled to summary judgment on qualified immunity grounds. *See* Delgado-Brunet v. Clark, 93 F.3d 339, 345 (7th Cir. 1996) (affirming a district court's determination that an officer was entitled to summary judgment on grounds of qualified immunity and the lack of evidence of deliberate indifference).

Ms. Reid also sues Sheriff Rovenstine and Nurse Stoops in their official capacities, contending the "inadequate jail observation and nursing policies and practices" contributed to her husband's death. To maintain a § 1983 claim against the defendants in their official capacities, Ms. Reid must demonstrate that the County's official policy or custom was the cause of the constitutional injury. Holmes v. Sheahan, 930 F.2d 1196, 1200 (7th Cir. 1991); *see also* Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d at 530-531. Municipalities aren't vicariously liable under § 1983 for their employees' actions; rather, the County's policy or practice must be the "direct cause" or "moving force" behind the

13

constitutional violation. Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d at 530. "That a constitutional injury was caused by a municipality may be shown directly by demonstrating that the policy itself is unconstitutional" or "indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers.'" Id. at 531(quoting Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995)). Deliberate indifference to a detainee's medical needs can also be proven by showing "there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." Holmes v. Sheahan, 930 F.2d at 1200.

Ms. Reid says the "absence of a policy requiring both the officers and the Jail nurse to properly supervise and report inmate symptoms and behavior proximately contributed to cause the death of Mr. Reid." The court doesn't agree, because the alleged deficiencies in the County's policies didn't effectively cause the denial of adequate medical care. The plaintiffs concede for purposes of this motion that there were written polices that included segregating intoxicated inmates and requiring officers to perform personal observations every thirty minutes, which were to be recorded in a daily log. There was also testimony of an unwritten policy of officers contacting a physician or nurse, or taking the detainee to the emergency room for serious medical conditions. The lack of a more specific policy on how to

14

treat and observe inmates with alcohol withdrawal cannot be deemed tantamount to a "systemic and gross" deficiency, which renders the policies constitutionally inadequate. *See* Bradich ex rel. Estate of Bradich v. City of Chicago, 413 F.3d 688, 690 (7th Cir. 2005)

Ms. Reid also argues that the "failure of the officers to take seriously" the policy of additional observations for intoxicated detainees demonstrates deliberate indifference. The court disagrees. Even if a jury could conclude that polices weren't followed in this case, there is no evidence of a pattern of conduct or a series of acts violative of constitutional rights from which deliberate indifference by the County can be inferred. Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d at 531 ("In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiffs must show that the policy itself is unconstitutional."). Nurse Stoops said the policies as to intoxicated inmates were followed "a lot," but Ms. Reid hasn't shown there was a pattern of injury resulting from the inadequate treatment of detainees suffering from alcohol withdrawal from which the trier of fact can draw the inference that the County was aware that a failure to follow policy was creating a risk for detainees going through withdrawal, and "a single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants." Id.

Based on the foregoing reasons, the defendants' motion for partial summary judgement [Doc. No. 37] is GRANTED IN PART AND DENIED IN PART. The motion

15

is GRANTED with respect to the plaintiff's claims that Officers Tom Craft and Angela Waddle, in there individual capacities, and Sheriff Aaron Rovenstine and Nurse Jayne Stoops, in their official capacities, violated Mr. Reid's Fourteenth Amendment right to receive adequate medical supervision and care during his confinement. The motion is DENIED with respect to the plaintiff's claim that Nurse Stoops and Officer Steve Barnhart, in their individual capacities, violated Mr. Reid's Fourteenth Amendment rights.

    SO ORDERED.

    Entered:   March 26, 2007

                              /s/ Robert L. Miller, Jr.
                              Chief Judge
                              United States District Court

cc: counsel of record